# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

KHODR HAMKA,

Plaintiff,

- vs. -

PAUL WYATT RAMIREZ II,

Defendant.

Case No.: 2:24-cv-11181

PLAINTIFF'S VERIFIED COMPLAINT

PLAINTIFF'S VERIFIED COMPLAINT FOR CIVIL ACTION

**I.   The Parties to This Complaint**

    **A.**    **The Plaintiff:**

| | |
|---|---|
| Name: | Khodr Hamka |
| Street Address: | 9 Edgerton Lane |
| City and County: | Dearborn, Wayne County |
| State and Zip Code: | Michigan 48120 |
| Telephone Number: | (313) 516-3200 |
| Email Address: | khamka@asset-holdings.net |

    **B.**    **The Defendant:**

| | |
|---|---|
| Name: | Paul Wyatt Ramirez II |
| Street Address: | 4710 N 65th Street |
| City and County: | Scottsdale, Maricopa County |
| State and Zip Code: | Arizona 85251 |
| Telephone Number: | (440) 463-2707 |
| Email Address: | paul@dimesenergy.com |

**II.   Basis for Jurisdiction:** Pursuant to 28 U.S.C. § 1332, diversity jurisdiction exists due to the following:

    **A.** The plaintiff, Khodr Hamka, is an individual who is a citizen of the State of Michigan.

    **B.** The Defendant, Paul Wyatt Ramirez II, is an individual who is a citizen of the State of Arizona.

    **C.** The amount in controversy exceeds $75,000.00.

**III.** **Statement of Claims**

    A. <u>**GENERAL ALLEGATIONS**</u>

1. On or about July 21, 2023, Defendant contacted Plaintiff to inquire as to whether Plaintiff would invest $25,000.00 with Defendant to purchase an interest in an oil and gas business venture with Defendant's company, Dimes Energy, LP.

2. Defendant guaranteed Plaintiff a minimum return on the investment of $3500 in the first month, which would be paid beginning September 21, 2023, $5000 in the second month, $7500 in the second month, and $10,000 per month in the third and fourth months. Thereafter, Defendant guaranteed Plaintiff that Plaintiff would either be employed by Dimes Energy, LP, with a guaranteed salary of $10,000 per month or receive monthly checks from the refinery based upon the production and price of oil.

3. To memorialize the promises, Defendant prepared a "Convertible Note to Royalty or Employment" and sent it to Plaintiff for execution. (Exh A, July 26, 2023 Convertible Note to Royalty or Employment.)

4. Prior to requesting that Plaintiff: (a) execute the July 26, 2023, Convertible Note to Royalty or Employment; or (b) deliver the funds for the business opportunity to Defendant, Defendant did not provide Plaintiff with any disclosures required pursuant to 16 CFR Part 437.

5. Plaintiff executed the July 26, 2023, Convertible Note to Royalty or Employment that same day and sent $25,000.00 via bank wire transfer

3

to Defendant, per Defendant's instructions, the following day. (*Id.*; Exh B, 7/27/23 Chase Bank Wire Transfer Confirmation).

6. The July 26, 2023 Convertible Note to Royalty or Employment was secured by collateral, specifically Defendant's ".035 of working interest in gollaher Lease in the town of Allegany, NY, also known as the farm number FC363 by American Refinery Group." (Exh A.)

7. On September 6, 2023, Defendant again contacted Plaintiff to inquire as to whether he or anyone Plaintiff knew would be interested in "a quick flip" for an investment of $50,000 to $65,000 for "a small oil transaction" that would be "an in and out deal" through an oil refinery with a guaranteed yield of $25,000 within 45 days.

8. Defendant represented to Plaintiff that he made $400,000 in six months doing small side deals like the business opportunity he was offering to Plaintiff and that if Plaintiff wanted a "piece of the pie" he needed to act quickly.

9. Plaintiff agreed to make a $50,000.00 investment in the business opportunity with Defendant.

10. To memorialize the second agreement, Defendant prepared a second "Convertible Note to Royalty or Employment" dated September 7, 2023, and sent it Plaintiff for execution. (Exh C, Sept. 7, 2023 Convertible Note to Royalty or Employment.)

11. Prior to requesting that Plaintiff: (a) execute the Sept. 7, 2023, Convertible Note to Royalty or Employment; or (b) deliver the funds for

4

the business opportunity to Defendant, Defendant did not provide Plaintiff with any disclosures required pursuant to 16 CFR Part 437.

12. Plaintiff signed the September 7, 2023, Convertible Note to Royalty or Employment and sent $50,000.00 via wire transfer to Defendant, per Defendant's instructions. (*Id.*; Exh D, 9/7/2023 Fidelity Investments Bank Wire Disbursement Confirmation).

13. The Sept. 7, 2023 Convertible Note to Royalty or Employment was also secured by collateral, specifically Defendant's ".035 of working interest in gollaher Lease in the town of Allegany, NY, also known as the farm number FC363 by American Refinery Group." (Exh C.)

14. Thereafter, Defendant failed to send Plaintiff proceeds from his initial $25,000.00 investment in the oil and gas business opportunity, as promised by September 21, 2023, or to provide Plaintiff with the return on his investments, as Defendant represented were guaranteed.

15. Rather, Defendant only issued the following payments to Plaintiff:

| | |
|---|---|
| 10/11/23 | $ 2,500.00 |
| 10/20/23 | $ 1,000.00 |
| 11/18/23 | $ 1,000.00 |
| 2/14/24 | $ 2,500.00 |
| 2/16/24 | $ 2,500.00 |
| **TOTAL** | **$ 9,500.00** |

16. Defendant also failed to send Plaintiff proceeds from his Sept. 7, 2023, investment of $50,000.00 investment in the oil and gas business opportunity, as promised within 45 days of the investment, or to provide Plaintiff with the return on his investments, as Defendant represented were guaranteed.

17. On multiple occasions, Plaintiff demanded by text message, phone, and email that Defendant perform on his promises to Plaintiff.

18. Defendant repeatedly promised that he would be sending payments to Plaintiff, but repeatedly failed to do so.

19. On March 12, 2024, through counsel, Plaintiff sent a demand letter to Defendant demanding return of the remaining $65,500.00 that Plaintiff had deposited with Defendant for the two business opportunities. (Exh E, Demand Letter.)

20. After written demand for payment was communicated by Plaintiff's counsel to Defendant, on April 5, 2024, Defendant contacted Plaintiff and promised that he would be returning Plaintiff's funds to him by the end of the week, but failed to do so.

21. Despite Plaintiff's demand and Defendant's promises, Defendant has failed to return Plaintiff's money and has failed to perform on the promises Defendant made to Plaintiff to induce Plaintiff to send the $75,000.00 in total funds to Defendant.

22. Plaintiff has suffered damages, including financial damages, humiliation, outrage, indignation, and other emotional distress, as a result of Defendants actions and failures to act.

### B. COUNT I: CONVERSION

1. Plaintiff incorporates by reference each and every preceding paragraph as if fully incorporated herein.

2. Plaintiff deposited $75,000 with Defendant for the purposes of entering into two business opportunities with guaranteed returns, as represented by Defendant.

3. Upon information and belief, Defendant failed to use the funds that Plaintiff deposited with Defendant for the intended purposes.

4. Rather, upon information and belief, Defendant converted the funds to his own personal use.

5. Plaintiff did not give Defendant permission to use Plaintiff's funds for personal use.

6. Plaintiff repeatedly demanded the return of his money.

7. Defendant has expressly or impliedly refused to return Plaintiff's money.

8. Defendant's use of Plaintiff's money for Defendant's own personal use is wrongful and amounts to common-law conversion and conversion under MCL 600.2919a, which caused Plaintiff to suffer damages in an amount in excess of $75,000.00.

### C. COUNT II: BREACH OF CONTRACT

1. Plaintiff incorporates by reference each and every preceding paragraph as if fully incorporated herein.

2. Plaintiff and Defendant entered into two contracts, memorialized in part in the July 26, 2023 Convertible Note to Royalty or Employment and the Sept. 7, 2023 Convertible Note to Royalty or Employment. (Exhs A & C.)

3. According to the terms of the two contracts, Plaintiff was to transfer to Defendant a total of $75,000.00 in exchange for Defendant's promise to invest the funds into business ventures that provided guaranteed rates of return to Plaintiff and that would provide employment to Plaintiff.

4. Pursuant to the two contracts, Plaintiff sent a total of $75,000.00 to Defendant via wire transfers in accordance with Defendant's instructions. (Exhs B & D.)

5. Plaintiff has fully performed his obligations under the two contracts.

6. Defendant has failed to perform his duties under the two contracts, in that he has failed to provide Plaintiff with the guaranteed returns on Plaintiff's investments and failed to provide Plaintiff with employment.

7. As a result of Defendant's failures to perform under the two contracts, Plaintiff has suffered damages in an amount in excess of $75,000.00.

**D. COUNT III: CLAIM AND DELIVERY**

1. Plaintiff incorporates by reference each and every preceding paragraph as if fully incorporated herein.

2. Pursuant to the July 26, 2023 Convertible Note to Royalty or Employment and the Sept. 7, 2023 Convertible Note to Royalty or Employment, Plaintiff deposited $75,000.00 with Defendant. (Exhs A – D.)

3. In each agreeemnt, Defendant granted Plaintiff a first secured and perfected interest in Defendant's ".035 of working interest in gollaher Lease in the town of Allegany, NY, also known as the farm number FC363 by American Refinery Group" (the Collateral). (Exhs A & C.)

4. The Collateral is an interest in an oil and gas lease held between Defendant and American Refinery Group.

5. Defendant defaulted on his payment obligations to Plaintiff.

6. On March 12, 2024, Plaintiff demanded repayment of the outstanding balance. (Exh E.)

7. Plaintiff is currently owed in excess of $75,000.00.

8. On information and belief, Defendant receives royalties from the Collateral from American Refinery Group on a regular basis.

9. Plaintiff is entitled to the royalties from the Collateral.

10. Despite Plaintiff's request, Defendant has refused to deliver the royalties from the Collateral to Plaintiff.

11. On information and belief, the Collateral is not under custody of law by virtue of any warrant for the collection of a tax, fine, judgment, or execution.

E.  **COUNT IV: FRAUDULENT MISREPRESENTATION**

1. Plaintiff incorporates by reference each and every preceding paragraph as if fully incorporated herein.

2. Defendant intentionally made false representations of material facts to Plaintiff regarding the oil and gas venture business opportunity, as set forth in the preceding paragraphs.

3. Defendant's representations were false when they were made.

4. Defendant knew that its representations were false when they were made, or Defendant made them recklessly, without knowing whether they were true.

5. Defendant intended that Plaintiff would rely on the representations.

6. Plaintiff relied on Defendant's false representations in investing into the oil and gas venture business opportunity.

7. As a result of Defendant's fraudulent misrepresentations, Plaintiff has suffered substantial economic losses in excess of $75,000.00.

F. **COUNT V: INNOCENT MISREPRESENTATION**

1. Plaintiff incorporates by reference each and every preceding paragraph as if fully incorporated herein.

2. Defendant's representations, as set forth in the preceding paragraphs, were made in connection with the making of the two contracts between Plaintiff and Defendant.

3. Plaintiff would not have entered into the investment contracts if Defendant had not made the representations.

    4. Plaintiff suffered substantial economic losses in excess of $75,000.00 as a result of entering into the contracts, and his losses benefitted Defendant.

 **G. COUNT VI: EXEMPLARY DAMAGES**

    1. Plaintiff incorporates by reference each and every preceding paragraph as if fully incorporated herein.

    2. Defendant's representations were made intentionally and maliciously and have caused Plaintiff to suffer humiliation, outrage, and indignation.

**IV.**  **Relief Sought:** PLAINTIFF REQUESTS that this court enter a judgment in his favor and against Defendant and award the following damages:

 A. treble damages in an amount that is in excess of $75,000.00 and in an amount of three times the amount of Plaintiff's actual damages suffered as a result of Defendant's conversion of Plaintiff's funds;

 B. compensatory damages in an amount that is in excess of $75,000.00 and that is sufficient to compensate Plaintiff for his actual, consequential, and incidental losses sustained as a result of Defendant's wrongful actions;

 C. exemplary damages in an amount in excess of $75,000.00 resulting from Defendant's intentional and malicious actions;

 D. issue an order requiring Defendant to appear personally before this court, with or without counsel, to answer Plaintiff's verified motion for possession pending final judgment, filed concurrently with this complaint for claim and delivery;

 E. enter a judgment ordering that any proceeds from the Collateral be deposited with the Court during the pendency of this action pursuant to FRCP 57;

F. interest, costs, and reasonable attorney fees

G. award Plaintiff other further interim and final relief, including monetary damages and costs, as justice and equity require.

I declare that the statements above are true to the best of my information, knowledge, and belief.

Dated: May 01, 2024

By: KHODR HAMKA

Prepared by:

/s/ Nadia M. Hamade
NADIA M. HAMADE (P76944)
ABATHAR N. ALKUDARI (P80330)
AT Law Group, PLLC
Attorneys for Plaintiff
3 Parklane Boulevard, Ste. 1500-W
Dearborn, Michigan 48126
(313) 406-7606
nmh@atlawgroup.com
at@atlawgroup.com

Dated: May 2, 2024